## CHICAGO & N. W. RY. CO. v. EVELAND et al.

### (District Court, D. South Dakota, S. D.   April 3, 1922.)

### No. 107.

**1. Taxation ☞498—Remedy by action at law in 35 different counties to recover part of tax held not adequate.**

Where, if an assessment against a railway company by a state tax commission was allowed to be certified down to and extended by the various counties and cities who were to collect it, the company, to avail itself of its right to sue at law for recovery of the portion claimed to be unjustly exacted, would be required to sue in 35 different counties, the remedy at law is inadequate, and does not prevent a suit for an injunction.

**2. Courts ☞262(2)—Adequate remedy at law must exist in federal courts to defeat federal equitable jurisdiction.**

The adequate remedy at law, which is the test of equitable jurisdiction in the federal courts, must exist in those courts.

**3. Courts ☞282(3)—Claim that assessment violates federal Constitution gives federal court jurisdiction.**

Plaintiff's claim, supported by proper allegations, that an assessment of its property complained of violates Const. U. S. Amend. 14, in that it denies the equal protection of the laws and deprives it of its property without due process of law, would give the federal court jurisdiction, though there were no diversity of citizenship; more than $3,000, exclusive of interest and costs, being involved.

**4. Evidence ☞601(4)—Compilation of land sales made from registered deeds held entitled only to such weight as chancellor thinks it entitled to.**

On the question whether farm lands have been systematically undervalued for taxation, a compilation of land sales, made from the consideration named in registered deeds, or from the amount of revenue stamps thereto attached, with nothing to indicate whether sales were for cash, or, if on deferred payments, the rate of interest, or whether the deeds were made pursuant to contracts entered into during the days of inflated values, or were merely reconveyances by defaulting purchasers, or whether court sales were on foreclosure, and, if so, whether they were bid in by the holder of the indebtedness, or whether, in probate sales, long-time payments were arranged for, if received at all, can only be given such weight as in the chancellor's judgment it is entitled to in the light of other competent evidence.

**5. Taxation ☞498—Evidence held to show that there was no systematic undervaluation of farm lands, as claimed.**

Evidence *held* to show that there was no systematic undervaluation of farm lands for purpose of taxation, discriminating against railway companies, or any undervaluation at all, but that, on the contrary, such lands were assessed at their full value, if not above such value.

**6. Taxation ☞399(2)—Commission not required to base valuation of railroad on any particular element.**

Rev. Code S. D. 1919, §§ 6596, 6597, and 6600, do not require the tax commission to fix the valuation of a railroad upon reproduction value, investment value, commercial value, stock and bond value, or on any other one particular thing, but require it to consider all of such elements and such other information as it can obtain before determining the actual value.

**7. Taxation ☞376(1)—Whether railroad franchise has any value is matter for determination of commission.**

Under Rev. Code S. D. 1919, §§ 6596, 6597, 6600, whether or not a railway company's franchise has a value that adds anything to the other elements of value that are to be considered by the state tax commission, is a matter for the determination of the commission.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Evidence ⬅≈215(5)—Statement filed with tax commission by railroad held competent against it as admission against interest.**

A statement filed by a railway company with the state tax commission, under Rev. Code S. D. 1919, § 6597, requiring a statement of facts concerning its property, earnings, etc., is competent evidence against the railroad company of the value of the property as an admission against interest.

**9. Constitutional law ⬅≈229(3), 284(1)—Taxation ⬅≈40(8), 49—No arbitrary action or scheme to value railroad property unfairly, when valued at less than shown by railroad's statement.**

Where a railroad company filed a statement concerning its property and its value with the state tax commission under Rev. Code S. D. 1919, § 6597, and the value fixed by the commission was less than the value as given in such statement, it could not be said that the tax commission acted arbitrarily, or were pursuing a scheme to unlawfully, unjustly, and unfairly value the railroad's property, or that it willfully and fraudulently disregarded the report, in violation of Const. S. D. art. 6, § 17, requiring equal and uniform taxation, article 11, § 2, prohibiting overvaluation for taxation, article 6, § 2, relative to due process of law, or Const. U. S. Amend. 14, relative to due process and the equal protection of the laws.

**10. Taxation ⬅≈40(8)—Raising of railroad valuation and lowering of farm land assessment not discriminatory, in view of changes made previously.**

That a state tax commission in 1921 increased its valuation of a railway company's property over the assessment of 1920 while equalizing the assessment on agricultural lands at less than for the year 1920, held not to show discrimination, where the assessment on agricultural lands was increased, and that against the railway decreased in 1920, and the railway company's assessment in 1921 was still below that for 1919, while the assessment of agricultural lands was much above the assessment for 1919.

**11. Taxation ⬅≈390(2)—That railroad cannot do business at profit does not show it has no taxable value.**

That railroad property is burdened with handicaps, which under the extraordinary conditions prevailing make it unable to do business at a profit, does not show that its property has no value and cannot be taxed.

In Equity. Suit by the Chicago & Northwestern Railway Company against H. L. Eveland and others, constituting the Tax Commission of the State of South Dakota, and others. Judgment dismissing the complaint.

F. W. Sargent, of Chicago, Ill., and A. K. Gardner, of Huron, S. D., for plaintiff.

Byron S. Payne, Atty. Gen., and V. R. Sickel, Asst. Atty. Gen., for defendants.

ELLIOTT, District Judge (in memorandum). In Chicago & Northwestern Railway Company, Plaintiff, v. H. L. Eveland, Hugh Smith, and H. C. Preston, Constituting the Tax Commission of the State of South Dakota et al., Defendants, I have determined to deny the motion of the defendants to dismiss the bill of complaint. In this motion counsel for defendants contend that this court is without jurisdiction, assuming that there is an adequate remedy at law. On the other hand, counsel for plaintiff urges that there is no adequate remedy at law, and further that a multiplicity of suits would result, and that federal questions are involved. The diversity of citizenship of plaintiff and de-

fendants is conceded, the plaintiff being a nonresident railway corporation and the defendants residents and officers of the state of South Dakota, and of different counties in the state, as set forth in the bill of complaint. It is conceded that more than $3,000, exclusive of interest and costs, is involved. It further appears by the allegations of the bill that the railway of the plaintiff, the assessment of which is complained of, is operated into and through 35 different counties of the state of South Dakota, and that different defendants are officers of these counties, respectively; that, if plaintiff has a remedy at law, it depends upon the payment of the tax under protest, and a suit in each of the various counties of the state where payments are made for the recovery of the amount alleged to be paid unjustly.

The bill contains further proper allegations as to the method in which it is alleged taxes were levied upon the property of the plaintiff, and charges that the tax commission willfully and fraudulently disregarded the report required by law to be made by the plaintiff to the commission, and the protests and objection of the plaintiff, and—

"willfully and fraudulently disregarded the true and actual value of the property of the plaintiff in the state of South Dakota, and willfully, knowingly, fraudulently, and arbitrarily added to the physical and actual value thereof a fictitious and arbitrary sum or amount on account of the franchises, rights, and privileges granted the said plaintiff under the laws of the state of South Dakota, well knowing that the exercise and use of said alleged franchises, rights, and privileges by the plaintiff, have and will continue to result, not in profit or value to the plaintiff, but in loss and damage to it, and said commission arbitrarily and in violation of section 17, article 6, of the Constitution of South Dakota, which provides that all taxation shall be equal and uniform, and in violation of section 2, article 11, of the Constitution of South Dakota, which provides that the valuation of property for taxation purposes shall never exceed the actual value thereof, and in violation of section 2 of article 6 of the Constitution of South Dakota, which provides that no person shall be deprived of life, liberty, or property without due process of law, and in violation of the Fourteenth Amendment to the Constitution of the United States, which provides that no one shall be deprived of life, liberty, or property without due process of law, and that no one shall be denied the equal protection of the law," said commission "has made the said unjust, excessive, and inequitable assessment of plaintiff's said property, which plaintiff alleges is fraudulent, unconstitutional, and void, and will result in an enormous disparity between the various assessments of property within said state, and is and will be confiscatory."

[1] The diversity of citizenship, the amount in controversy, together with the fact that it affirmatively appears that, under the circumstances alleged in the bill, the alleged wrong complained of by the plaintiff is of such a character that plaintiff's remedy at law is inadequate, in that it appears from the bill that, if the assessment made by the defendants is allowed to be certified down to and extended by the various counties and cities who are to collect the tax, the plaintiff, in order to avail itself of its rights in suits at law, would be required to bring suits in each county, making 35 in all. Under these circumstances, in an opinion rendered by the present Chief Justice in Taylor v. L. & N. Ry. Co., 88 Fed. 350, 31 C. C. A. 537, Judge Taft said:

"Courts of equity frequently interfere to prevent a multiplicity of suits at law. It is a well-recognized head of equity jurisdiction. * * * In many cases in which the question of equity jurisdiction to enjoin a tax is con-

sidered by the Supreme Court of the United States, the prevention of a multiplicity of suits is specifically mentioned as a sufficient reason for its exercise."

[2] I am of the opinion, also, that unquestionably the law is that the "adequate remedy at law," which is the test of equitable jurisdiction in the federal courts, must exist in those courts, and counsel for defendants do not urge a remedy at law in behalf of the plaintiff in this court.

[3] Upon the face of the bill there is the claim of the plaintiff, supported by proper allegations, that the assessment of the property of the plaintiff, complained of in the bill, violates the Fourteenth Amendment of the Federal Constitution, in that it denies the equal protection of the laws, and that by the manner in which this assessment has been made plaintiff has been deprived of its property without due process of law. If there were no diversity of citizenship, this issue would give this court jurisdiction. L. & N. Ry. Co. v. Bosworth (D. C.) 209 Fed. 403.

Unquestionably, the allegations of the bill present a real and substantial controversy under the Constitution of the United States, involving more than $3,000 exclusive of interest and costs, and therefore this case is cognizable in this court. It has recently been held by the Supreme Court of the United States that:

"In such a case the jurisdiction of that court, and ours in reviewing its action, extends to every question involved, whether of federal or state law, and enables the court to rest its judgment or decree on the decision of such of the questions as in its opinion effectively disposes of the case." Davis, Director General of Railroads, et al. v. Wallace et al., 257 U. S. 478, 42 Sup. Ct. 164, 66 L. Ed. 325 (opinion dated January 9, 1922).

The plaintiff in this action, seeking an injunction, having offered to pay the taxes confessedly due, and offered to pay such amount as the court might find to be justly and equitably due, is entitled to maintain this action in this jurisdiction. Keokuk & Hamilton Bridge Co. v. Salm et al., 258 U. S. 122, 42 Sup. Ct. 207, 66 L. Ed. —— (opinion dated February 27, 1922). It is ordered that the motion to dismiss be and is denied, with an exception to the defendants.

When it comes to a determination of the issues presented upon the merits, fortunately there is little dispute between the parties plaintiff and defendant, or counsel for the respective parties, as to the law that must necessarily guide the determination of the issues presented. Counsel for both plaintiff and defendant, each placing particular emphasis upon different elements that should enter into consideration in fixing the value of plaintiff's property for taxation, agree upon the proposition that:

"Equity will not relieve against an assessment merely because it happens to be at a higher rate than that of other property; that such inequalities, due to mistake, to the fallibility of human judgment, or to other accidental causes, must be borne, for the reason that absolute uniformity cannot be obtained; that, in other words, what may be called sporadic cases of discrimination cannot be remedied by the chancellor. He can only interfere when it is made clear that there is, with respect to certain species of property, systematic, intentional, and unlawful undervaluation for taxation by the

taxing officers, which necessarily effect an unjust discrimination against the species of property of which the complainant is an owner."

Counsel for plaintiff, recognizing this rule, alleges a systematic, intentional, and unlawful undervaluation for taxation by the taxing officers of the agricultural land in the state of South Dakota, and alleges that this undervaluation of the agricultural land in the state necessarily effects an unjust discrimination against the railway property of the plaintiff. This, together with the further proposition urged by the plaintiff, that its railway property was knowingly, willfully, and arbitrarily overvalued, constitutes the real cause of complaint by the plaintiff. The plaintiff, of course, urges that this action on the part of the tax commission has been systematically pursued, and that such acts of the commission are in violation of the Fourteenth Amendment of the Constitution of the United States, in that the enforcement of this tax, thus arbitrarily levied, will result in a denial of the equal protection of the law to the plaintiff, and will also result in the taking of plaintiff's property without due process of law.

[4, 5] As a basis for the alleged discrimination in the valuation of the property of the plaintiff as compared with other property in the state, the largest item of taxable property, to wit, agricultural lands within the state, is taken by the plaintiff, and it is alleged that the farm lands in the state of South Dakota were assessed and equalized by the tax commission for the year 1921, the same being the year in question, at not to exceed 60 per cent. of the actual value of the lands. The burden is assumed by the plaintiff to show the undervaluation of the farm lands of the state, and the unjust discrimination complained of is dependent upon the establishment by the plaintiff, first, of this undervaluation. In support of this allegation, the plaintiff introduced a compilation of land sales, made by the employees of the plaintiff under instruction to certain employees to go to the register of deeds' offices and secure the amount of the consideration named in the deeds, and where the consideration was named as $1, love and affection, etc., that the value should be computed upon the amount of revenue stamps attached to the deed. This information was then reported into the office of the plaintiff at Chicago, and there a table was made up by other employees. There is nothing in these reports or tables that indicates whether a particular sale was made for cash, or, if upon deferred payments, the rate of interest; whether deeds were made pursuant to contracts of sale, the latter having been entered into during the days of inflated values of the land in 1919 or 1920. There is nothing to show whether or not it was simply deeding back lands where purchasers had defaulted at the high prices, or whether a particular conveyance was a conveyance or a reconveyance; also the court sales, with no information as to whether or not the sale was upon foreclosure, and for more than the land was worth, bid in by the holder of the indebtedness for the full amount, whether or not, in probate sales, arrangements were made for long time payments, and no testimony, as a matter of fact, that any of the amounts named were actually paid, or were deemed the value of the land at the time the transfer was effected by the parties

thereto—none of this information, all of which is very important in determining the weight that shall be given to this testimony.

Ordinarily a court would be justified in saying that this compilation is not evidence of value, is incompetent, that there has been no foundation laid for it, and it ought not to be received. I think it should be conceded, if it is received, it can only be given such weight as in the judgment of the chancellor it is entitled to, considering the manner in which it was gathered, by whom and how it was compiled, and judged in the light of other competent evidence in the case. The fact that the statutes of this state do not require that the actual consideration be named in a deed adds nothing to the strength of such a compilation. I am not unmindful of the press reports sent out by the Census Bureau, which were introduced in evidence by the plaintiff. These deductions, made by the employees in the office and sent out as a preliminary statement for the information of the public, are interesting, but have a doubtful value as evidence upon a specific issue such as we have here. This is supported by little competent testimony of witnesses as to the actual value of the lands. Upon this branch of the case the defendants brought to bear an overwhelming volume of testimony tending to substantiate the good faith of the tax commission and the conscientious performance of its duties in the taxation and equalization of all of the property in the state of South Dakota at its actual cash value, as required by law.

The undisputed testimony in this record discloses that the tax commission of the state was formed in 1913, and that at once an earnest effort was made by the tax commission of the state to bring the property of the state, for taxation purposes, up to its actual cash value, in compliance with the provision of the statutes of the state of South Dakota. Prior to 1913 it is true that property in the state of South Dakota had not been taxed in accordance with the provisions of the statute requiring valuation at its actual cash value. As an evidence of what was done by this tax commission, the total assessed valuation of the farm lands of the state, as equalized by the commission for the years 1913 to 1921, inclusive, is as follows:

| | |
|---|---|
| In 1912, agricultural lands of the state were assessed at.... | $ 219,990,547.00 |
| In 1913, agricultural lands of the state were equalized by the commission at........................................ | 764,808,016.00 |
| In 1914, agricultural lands of the state were equalized by the commission at........................................ | 782,644,540.00 |
| In 1915, agricultural lands of the state were equalized by the commission at........................................ | 818,428,345.00 |
| In 1916, agricultural lands of the state were equalized by the commission at........................................ | 832,679,630.00 |
| In 1917, agricultural lands of the state were equalized by the commission at........................................ | 925,391,835.00 |
| In 1918, agricultural lands of the state were equalized by the commission at........................................ | 1,024,045,034.00 |
| In 1919, agricultural lands of the state were equalized by the commission at........................................ | 1,362,914,284.00 |
| In 1920, agricultural lands of the state were equalized by the commission at........................................ | 1,547,865,238.00 |
| In 1921, agricultural lands of the state were equalized by the commission at........................................ | 1,444,446,641.00 |

In 1913 this commission increased the value of agricultural lands in the state nearly 250 per cent. and consistently added large valuations to the land every year up to the year 1921, when, at the time of making the assessment and equalization, the greatest depression in the value of farm lands the country has ever known was at its height, with concededly no sale, no cash value of lands, no income to be derived by the owners because of the high cost of producing crops, and the entire collapse of the prices at which the products of the farm could be sold, and in this year the reduction was only a little over 6 per cent., leaving the equalized assessment of farm lands far above actual cash values, or, in other words, this small discount fell far short of representing the depreciation in the actual cash value of the agricultural lands of the state.

I stated to counsel at the close of all the testimony that I was impressed that the tax commission had, as a matter of fact, been most unfair to the agricultural landowners of the state in the fixing of values upon such lands. The real result of the raising of the values of these lands from year to year was supported by the testimony of men of the highest standing in every county through which the railway lines of the plaintiff are operated. These witnesses, in large numbers, universally testified to the cash value of the lands, and in most instances made them less than the amount at which they were taxed. The most liberal interpretation of this competent evidence would fix the values at substantially what they were assessed at. The action of the tax commission was supported by testimony showing that the commission was organized and proceeded with a purpose to fix the actual cash values of the property of the state for taxation. It showed the calling together of the various auditors of the different counties each year before taxes were levied, with positive instructions from the state tax commission to the various county officers, testifying that they had attended such meetings, and to the instructions received at such meetings to tax the land at its full cash value, and then testified to their strict compliance with such instructions; then the testimony of the commission as to the examination of the lands in various counties, and the equalization from year to year, in the honest belief that they were taxing the lands at their actual cash value.

I am of the opinion, therefore, that plaintiff has entirely failed to show an undervaluation for taxation of the agricultural lands of the state for the year 1921, and certainly far short of showing any intentional or systematic undervaluation. On the other hand, the record discloses to my satisfaction that it has been the intent and purpose of the state tax commission, and of the various county officers, since the year 1913, systematically to raise the value, for taxation purposes, of agricultural lands to its actual cash value; that this has been done, and that, if any criticism can justly be made as to the 1921 valuation of such lands in the state of South Dakota, it should be a criticism of the optimism or judgment of these officers in placing so great a cash value upon these lands. The substantial allegations of the bill of complaint, dependent upon showing discrimination against the plaintiff because of undervaluation of these lands, and overvaluation of its railway prop-

erty, is, in so far as the undervaluation of these lands is concerned, entirely unsupported, and discrimination does not exist in the manner of the assessment of these two classes of property because of undervaluation of agricultural lands. Upon the record made, I have no hesitancy in declaring that the tax commission of the state of South Dakota and the taxing officers of the different counties have systematically and consistently raised the value of agricultural land from year to year since 1913, with the express purpose of placing the taxing value at what, in the judgment of the tax commission, was the actual cash value of the land, as required by the statutes of the state of South Dakota. The plaintiff has therefore not been discriminated against because of undervaluation of the agricultural lands of the state, and there is an entire absence of any intent, purpose, or scheme of premeditated action upon the part of the tax commission to discriminate against the plaintiff by undervaluing the agricultural lands of the state for taxation purposes. The entire testimony clearly negatives any claim of fraud on the part of the tax commission, and affirmatively shows that these officers, defendants, used their best judgment in the valuation of these farm lands, and that there was no scheme, plan, purpose, or intent to undervalue the said farm lands.

The plaintiff, by further proper allegations in its bill of complaint, alleges that the said tax commission, in making the assessment of the railway properties of the plaintiff, knowingly and willfully fixed and determined the value thereto in excess of the actual value of said property, and in making said assessment the said commission willfully and fraudulently disregarded the report, protest, and objections made by the plaintiff, and willfully and fraudulently disregarded the true and actual value of the property of the plaintiff in the state of South Dakota, and arbitrarily added to the physical and actual value thereof a fictitious and arbitrary sum or amount on account of the franchises, rights, and privileges granted to the plaintiff under the laws of the state of South Dakota, well knowing that the exercise of these, the said franchises, rights, and privileges, by the plaintiff, has and will continue to result in no profit or value to the plaintiff, but in loss and damage to it.

These allegations also involve the determination of the arbitrary violation by the said commission of section 17, article 6, of the Constitution of the state of South Dakota, section 2, article 11, of said Constitution, and also section 2, article 6, of the Constitution of the state of South Dakota and the Fourteenth Amendment to the Constitution of the United States. The determination of this issue involves the method provided by the state of South Dakota for the assessment of railway property, and the manner in which the defendant tax commission have performed their duties with reference to the taxation of the plaintiff's property.

The assessment of railroad property in this state is made by the tax commission, under and by virtue of the authority contained in section 6596, Revised Code 1919, which provides that:

"All property, real and personal, belonging to any railroad company in this state actually and necessarily used in the operation of its line or lines of rail-

way in this state shall be assessed for the purposes of taxation by the tax commission, and not otherwise. In making such assessment the tax commission shall, among other things, take into consideration the value to such railroad company of its franchises, rights and privileges granted under the laws of this state, if any, to do business as a common carrier in this state, and for the purpose of aiding the tax commission in making such assessment, it shall be the duty of the board of railroad commissioners to collect information and facts concerning the value of the property of each railroad company in this state, and to make an estimate of such value, and to make and file with the tax commission on or before the first day of June, each year, a written and detailed report of such information, facts and estimates. Failure to make and file such report shall in no manner invalidate the assessment or tax. In such report the board of railroad commissioners shall make a separate estimate of the value of that part of the railroad property, including terminals, depots, warehouse lots, sidings, passing tracks, switches, roundhouses, shops, yards, ground and other structures, which is situated within the limits of a city or incorporated town. * * * "

Section 6600 of said Revised Code further provides that the said tax commission shall assess the property of the railroads on the 7th day of July in each year; that the ownership and valuation of the assessment shall be as of the 1st day of May, each year, and shall be made upon the main line or lines and branches thereof, within the state separately, and shall include the right of way, roadbed, bridges, culverts, rolling stock, depots, yards, shops, buildings, gravel, or sand beds, land for snow protection, and all other property, real or personal, used in and employed about and incidental to the actual and necessary operation and maintenance of such railroads and branches thereof. Said section further provides that, in assessing railways and their equipment and property, the tax commission shall consider the earning power of the property as shown by its gross and net earnings, the value of the franchises, if any, or other privileges granted by the state, if any, under which it has the right of eminent domain, and the right to do business within the state, and any and all other matters necessary to enable the tax commission to make a just and equitable assessment of the value of such property.

By section 6597 of said Code this railway company, plaintiff here, was required to furnish the tax commission, on or before June 1, 1921, a signed and sworn statement as of the 31st day of December preceding, according to the instructions, and on the forms, prescribed by the tax commission, which the statutes provide shall embrace and show:

"1. The whole number of miles of main line or lines and branches thereof owned, operated or leased in the state by the railroad company making the return. and the present true cash value thereof per mile.

"2. The number of miles of main line or lines and branches thereof owned, operated or leased by such company, the number of miles of side track and the present true cash value thereof per mile, the quantity of land actually used for gravel or sand beds or for snow protection, and the number and character of buildings and present cash value thereof, the width of the right of way. the width and length of warehouse lots located in each county in the state. and the value thereof.

"3. The number of miles of main line and the number of miles of side track and passing tracks and value thereof, the width and length of right of way, the number and size of warehouse lots upon or contiguous to the right of way. the size, cost and character of the passenger depot, freight depot, warehouse or warehouses, shops, turn tables, roundhouses, engine stables, coal houses, stockyards, and of all other buildings; the amount of ground used for

yards in addition to ground already specified, and the quantity of unplatted land held or actually and necessarily used exclusively for railway purposes, owned by such company and situated within the limits of each city or incorporated town, and the value thereof, and of any terminals therein owned by such company.

"4. The number of engines, passenger, mail, express, baggage, freight and other cars owned by such company and used in operating such railroad in this state; and on roads having various lines and branches within the state the statement shall show the actual amount of rolling stock owned by the company, in use on each of such lines and branches within this state during the year for which the report is made.

"5. The total gross earnings of the company for the year for which the report is made, the amount paid out for operating expenses, taxes, interest on bonds and permanent improvements.

"6. The total net earnings of the company for the year for which the report is made, and the total number of miles owned and operated.

"7. The total gross earnings of the various lines and branches owned and operated by the company within this state during the year for which the report is made, the amount paid out of the same for operating expenses incurred in operating such lines and branches, the total amount of taxes levied upon such property for such year, the amount paid out for interest on bonds issued upon the lines and branches in the state, the amount of such bonds per mile and the interest which they bear, and the amount paid out for permanent improvements upon the lines and branches within the state during such year.

"8. The per cent. paid to the stockholders of such company during such year as dividends, upon both common and preferred stock, and the surplus representing undivided profits on hand at the time of making such statement.

"9. Such other information and statistics as the tax commission may require"

—all of which is pleaded and set forth in the bill of complaint, and, of course, is admitted by the defendants. The bill thereupon alleges, in substance, that pursuant to the provisions of said statute, and in the time and manner therein specified, the plaintiff, by its duly authorized officer, furnished to the said tax commission a statement, signed and sworn to by the principal officer of the plaintiff, correctly and accurately giving and showing in detail all the information, matters, and things required by the said statute, and the instructions given and prescribed by said tax commission. It is further alleged in the bill, in substance, that thereafter the said tax commission, claiming to act under and by virtue of the authority in it vested by the statutes of the state of South Dakota, proceeded to make an assessment of the value of the property of the plaintiff in the said state of South Dakota, actually and necessarily used in the operation of its lines in said state, and to determine and fix the value thereof, and thereupon assessed, determined, and fixed the aggregate value of the property of the plaintiff so situated within the state of South Dakota in the sum of about $42,000,000, which is the equivalent of approximately $43,183.85 per mile.

[6-8] At this point I may say that it is not my purpose to review or even quote from the various decisions of the Supreme Court of the United States, declaring recognized elements that may be considered by the tax commission in the fixing of the value of railways for taxation purposes. Barring the fact that counsel for plaintiff and defendant, respectively, emphasize this element or that in a particular decision, all agree that the various elements set forth in the statute just

quoted, numbered 1 to 9, inclusive, are entirely proper for considera-
tion by the tax commission in fixing the value of plaintiff's property.
This statute of the state of South Dakota does not bind the tax com-
mission, and say that the valuation be fixed by it dependent upon the
reproduction value, investment value, commercial value, stock and
bond value, or any other one particular thing. My own judgment is
that a fair interpretation of the statute requires the tax commission,
vested with the authority to fix this value, to consider all of these ele-
ments, and to gather such other information as it may and can before
determining the actual value of the railway property to be taxed. This
statute requires the statement furnished by the company to show the
true cash value of the company's tangible property within the state, the
earnings and profits of the company, and I am clearly of the opinion
that whether or not the franchise has a value that adds anything to the
other elements that are considered is a matter for the determination of
this commission. The law requires that, when all of these things have
been considered, after this information has been furnished by the rail-
way company, and certain information furnished by the board of rail-
road commissioners, and such other information as can be procured by
the tax commission, it is then the duty of the tax commission to assess
the property upon the true cash value.

[9] The plaintiff filed a statement in compliance with this statute
before the assessment for the year 1921 was made. This statement
was competent evidence of the value of the property of the plaintiff,
because it was the plaintiff's admission against interest, made pursuant
to the requirement of the statute, for the purpose of enabling the tax-
ing officers to ascertain the true value of its property. Atchison, T. &
S. F. R. Co. v. Sullivan, 143 Fed. 456, 97 C. C. A. 1. This annual
statement, filed by the plaintiff on June 15, 1921, complies with this
statute, and, among other things, shows that the total value of said
property, as stated in this statement filed by the plaintiff, is $47,057,991,
which is more than $5,000,000 more than the amount finally fixed as
the value of plaintiff's property. If this statement of the plaintiff is
competent evidence of the value of the property of the plaintiff, as
stated in Atchison, T. & S. F. R. Co. v. Sullivan, it can hardly be said
that the tax commission acted arbitrarily, or were pursuing a scheme
unlawfully, unjustly, and unfairly to value the property of the plain-
tiff at a sum greater than its actual value.

This statute is enacted for a purpose. That purpose is served only
when the statement has been furnished by the railway company, and
that statement has been duly considered by the tax commission. In
this case, at this time, the element of discrimination being eliminated,
plaintiff cannot complain in a court of equity that the valuation upon
the property of plaintiff was placed by the tax commission at more than
$5,000,000 less than the value of the physical property of the plaintiff
in the state, as furnished by the plaintiff under oath, pursuant to the
requirements of this statute. It was the duty of the tax commission
to consider this statement, to consider the information it secured in
the manner provided by statute, and to fix a value upon the property.
This the record discloses was done, and the result of the deliberations

of the tax commission was to place a value of more than $5,000,000 less upon the entire properties and rights of the plaintiff, than the amount of the physical valuation that had been furnished by the company under said statute. This necessarily is far short of willfully and fraudulently disregarding this report as alleged in the bill, nor can fraud upon the part of the tax commission be sustained by a showing that the valuation placed by the tax commission was less than the value of the physical property as furnished by the plaintiff.

There is no evidence here as to what account was taken by the tax commission of the franchises, rights, and privileges granted to the plaintiff. Whether or not any value was ascribed to them. Certainly there is no proof that a value was placed upon them by the tax commission. There is an entire absence of any testimony upon which it can reasonably be held that this tax commission acted arbitrarily in violation of the various sections of the Constitution of the state above referred to, and of the Fourteenth Amendment to the Constitution of the United States.

It was conceded upon the argument by counsel for the defendants that the plaintiff had the privilege, when making this report pursuant to the provisions of the statute of the state of South Dakota, to in such report explain and furnish proofs that it might see fit to attach to and make a part of the report. Nothing of this kind was done, and the report was made without explanation or qualification. The truth of the statements in this report were verified by officers and employees of the plaintiff, who were placed upon the witness stand, and it was conceded that this report was furnished for the use of the tax commission in determining the value to be placed upon the properties of the plaintiff for taxation. The plaintiff placed its officers and employees upon the stand, eliciting testimony as to the value of the properties, as to the gross income and net income, as to the amount of stocks and bonds, as to the business done upon the particular lines as compared with the whole line, and the value of the lines within the state, compared with the value of the entire system. Even if it is conceded that every one of the different elements claiming to enter into the value of the properties as covered by the proofs of the plaintiffs are proper and necessarily to be considered upon the face of the entire record, including the sworn statement of the plaintiff furnished for the purpose of guiding the tax commission in the making of the valuation, it cannot be said that this tax commission in the year 1921 overvalued the property of the plaintiff.

[10] Complaint is made by the plaintiff that the property of the railway in the state of South Dakota was increased in 1921 over the assessment of 1920, while the assessment upon agricultural lands was equalized at less than it was for the year 1920. An examination of the record discloses that the property of the plaintiff was assessed in 1919 for $41,960,113. In 1920 it was assessed at $41,115,784. Why this valuation was decreased does not appear in the record. In 1921 the value is placed back at $41,956,406. The value, however, of the property of the plaintiff in 1921 is less than it was in 1919, while the value of the agricultural lands in the state was equalized in 1919, at $1,362,914,284, and in 1921, with the slight reduction, it was still $1,444,446,641. It

will therefore be seen that, while the tax upon the property of the plaintiff for some reason was reduced in 1920, in the same year the assessment upon the agricultural lands was increased. In 1921 the value of the agricultural lands was decreased a little more than 6 per cent., and was still assessed at a sum nearly $82,000,000 more than it was in 1919, while the property of the plaintiff in 1921 was assessed at about $4,000 less than in 1919. Instead of showing discrimination in the taxing of property of the plaintiff and that class of property named in the bill of complaint, the record shows a decrease of the plaintiff's valuation from that of 1919, and an increase of more than $80,000,000 in the assessment of agricultural land.

[11] I am not unmindful of the showing made by the plaintiff with reference to the net income of the property. Unquestionably this is a proper item to be considered in the determination of the value of the property. In these extraordinary times, too much weight should not be placed upon the net earning power of a property in determining its value. It is a matter of common knowledge that railroads have suffered in common with other properties. I think it should be conceded that the management of this character of property was burdened with handicaps that do not necessarily apply to other lines of business, and yet I know of no authority that would justify a court in saying that because a property is thus burdened under extraordinary conditions, and that during such period it is unable to do business at a profit, therefore it has no value and cannot be taxed. If that principle were to be recognized, it would have its application to the largest item of property in the state, agricultural lands. It appears in this record that the lands in the garden spot of the state failed to pay to the owners in 1921 the amount of taxes assessed against the land, with no income whatever. It is to be hoped, however, that this is a temporary condition, and that there is real value in the lands, and the same is true of the railway properties. The conditions have been such that the market and sale of the bonds of the plaintiff have necessarily suffered, and yet the plaintiff railway has made a good record and has paid its dividends and its interest upon its obligations, which is more than can be said for the owners of the agricultural lands, the assessment of which is made the basis of complaint by plaintiff.

I am of the opinion that the proofs fall far short of sustaining the allegations that these defendants willfully and fraudulently disregarded the report, protests, and objections made by the plaintiff, and that the defendants willfully and fraudulently disregarded the true and actual value of the property of the plaintiff in the state of South Dakota, or that they willfully, knowingly, fraudulently, and arbitrarily added to the physical and actual value a fictitious or arbitrary sum or amount on account of franchises, rights, and privileges granted the plaintiff under the laws of the state of South Dakota, as alleged in the bill of complaint. I am therefore of the opinion that the complaint should be dismissed, and that the preliminary injunction heretofore issued should be dissolved.

You may prepare proper judgment and order, giving plaintiff proper exception, and forward the same to me.